UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN PAUL SOTO,

Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____/

Case No. 17-10054

Linda V. Parker
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 13)**

## I.  PROCEDURAL HISTORY

A.  <u>Proceedings in this Court</u>

On January 9, 2017, plaintiff Justin Paul Soto filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Linda V. Parker referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 12, 13).

B.    Administrative Proceedings

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on March 7, 2014, alleging disability beginning on October 7, 2003.  (Tr. 93).[1]  The claims were initially disapproved by the Commissioner on July 21, 2014.  (*Id.*).  Plaintiff requested a hearing and on July 2, 2015, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Davis F. Neumann, who considered the case *de novo*.  (*Id.*).  In a decision dated October 29, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 101).  Plaintiff requested a review of this decision.  (Tr. 14).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 15, 2016, denied plaintiff's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 6.  All references to the same are identified as "Tr.".

## II.   ALJ FINDINGS

Plaintiff, born October 7, 1985, was 18 years old on the alleged disability onset date.  (Tr. 99).  He has no past relevant work.  (*Id.*).  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since October 7, 2003, the alleged onset date.  (Tr. 95). At step two, the ALJ found that plaintiff's bipolar disorder was "severe" within the meaning of the second sequential step.  (Tr. 95).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 96).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would require work in a low stress environment defined as only occasional changes in the work setting.  The claimant would be limited to simple, routine, and repetitive work at an SVP 1-2. The claimant would require isolated work with only occasional supervision and not in direct contact with the public.

(Tr. 97).  At step four, the ALJ found that plaintiff has no past relevant work.  (Tr. 99).  At step five, the ALJ denied plaintiff benefits because he found that there

were jobs that exist in significant numbers in the national economy that plaintiff

can perform.  (Tr. 99-100).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

      1.    Treating Physician

Plaintiff argues that the ALJ did not accord adequate weight to his treating physicians' opinions.  (Dkt. 12, p. 5).  Specifically, Dr. Washington and Dr. Hong each assessed a GAF score of 45 (Tr. 583, 587, 593, 610, 879), but the ALJ gave little weight to the GAF scores and the medical documentation supporting the scores.  (*Id.* at 6-7).  Additionally, plaintiff argues that the medical evidence supports that he has difficulties coping with economic, occupational, housing, and social environment.  (*Id.* at 6).  He contends that failure to "seriously consider" these opinions justifies remand.

According to the Commissioner, there was no medical opinion from a treating physician in the record that the ALJ failed to weigh.  (*Id.* at p. 15). The Commissioner points out that, "[m]edical opinions" are "statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [the claimant's] impairments, including [his] symptoms, diagnosis, and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  (*Id.*) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). The GAF scores and Dr. Hong's Axis 4 assessment do not meet this definition. (*Id.* at p. 16).

The Commissioner argues further that the ALJ adequately explained why he gave little weight to the GAF scores: (1) they were snapshots of plaintiff's functioning that did not present a reliable longitudinal picture of his mental functioning; and (2) they were generally inconsistent with the objective medical evidence.  (*Id.*) (Tr. 98).  The ALJ noted that the medical evidence showed generally normal mental status examinations and improvement in plaintiff's symptoms with medication.  (*Id.*).  The Commissioner contends that plaintiff has not undermined this explanation.

In addition to the GAF scores, the Commissioner notes that the only other evidence to which plaintiff points is Dr. Hong's Axis 4 assessment which notes that plaintiff had economic, occupational, housing, legal, and social problems.  (*Id.*) (Tr. 303).  The Commissioner posits that this evidence also does not meet the definition of a medical opinion, so the ALJ was not required to weigh it.  (*Id.* at p. 16-17) (citing *Hawley v. Comm'r of Soc. Sec.*, 2016 WL 8671206, at *7 (E.D. Mich. July 22, 2016) (finding that treatment notes did not "opine on what Plaintiff can do despite her symptoms" or "address what restrictions might be due to her alleged symptoms" were not a medical opinion), *report and recommendation adopted*, 2016 WL 4536427 (E.D. Mich. Aug. 31, 2016)).  Accordingly, there is no error in the ALJ's consideration of the medical evidence from his treating physicians.

The undersigned finds no error in the ALJ's weight assignments.  The ALJ was not required to accord the treating physicians' assessments any weight because those physicians did not provide an "opinion" within the meaning of the regulations.  "The law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's 'medical opinion.'"  *Calloway v. Comm'r of Soc. Sec.*, 2016 WL 1165948, at *11 (E.D. Mich. Mar. 1, 2016), *report and recommendation adopted*,  2016 WL 1161529 (E.D. Mich. Mar. 23, 2016) (citing 20 C.F.R. § 404.1527(a)(2); *Bass v. McMahon,* 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)"); *Bowen,* 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without a residual functional capacity ("RFC") assessment)).  "Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  SSR 06-3p, 2006 WL 2329939, at *2 (2006).  An opinion from a medical source who has examined a claimant is given

more weight than one from a source who has not performed an examination (a

"non-examining source"); and an opinion from a medical source who regularly

treats the claimant (a "treating source") is afforded more weight than that from a

source who has examined the claimant but does not have an ongoing treatment

relationship (a "nontreating source").  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d

365, 375 (6th Cir. 2013) (internal citations omitted).  However, the ALJ need not

assign any weight to evidence that is not a medical opinion.

GAF scores do not constitute medical opinions.  As explained in *Benton v.

Comm'r of Soc. Sec.*, 2017 WL 6333862, at *8 (W.D. Mich. Dec. 12, 2017), while

the Court must generally defer to the medical opinions expressed by a claimant's

care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is

not required "to put stock in a GAF score in the first place."  *Kornecky v. Comm'r

of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. Feb. 9, 2006) (citing *Howard v.

Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).  Indeed, a "GAF score

does not reflect a clinician's opinion of functional capacity, and, therefore, an ALJ

is not required to consider it when determining a claimant's ability to

work."  *Shorkey v. Comm'r of Soc. Sec.*, 2014 WL 5361995, at *3 (E.D. Mich.

Sept. 12, 2014), *report and recommendation adopted*, 2014 WL 5362069 (E.D.

Mich. Oct. 21, 2014) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241

(6th Cir. 2002) (ALJ is not required to consider GAF scores in assessing residual

functional capacity)).  Thus, the ALJ was not required to defer to the GAF scores provided by Drs. Hong and Washington.  For this reason, the undersigned finds no reversible error in the ALJ's assessment of the GAF scores in this case.

Plaintiff's challenge based on the Axis IV determinations by both Drs. Hong and Washington which appear in the same treatment records as the GAF scores, fails for the same reason.  (*See* Tr. 303, 375).  The ALJ did not assign weight to the respective determinations.  The Axis IV determinations consist of checked boxes indicating that plaintiff has the following "problems": economic, occupational, housing, social environment, and interacting with the legal system.  (Tr. 303).  The Axis IV determinations address neither the nature nor severity of these "problems," nor what plaintiff can still do despite these problems.  *See* SSR 06-3p, 2006 WL 2329939, at *2 (2006); *Bass*, 499 F.3d at 510 (holding that, "since [the treating physician] made no medical judgments, the ALJ had no duty to give such observations controlling weight or provide good reasons for not doing so.").  Thus, like the GAF scores, the Axis IV determinations do not qualify as opinions to which the ALJ is required to assign weight.  Consequently, the ALJ did not err in not giving weight to the Axis IV determination.

To the extent plaintiff is arguing generally that the ALJ did not accord his treating physicians' opinions adequate weight, beyond the GAF scores and Axis IV determinations, this argument is unavailing as there is no opinion in the record

from a treating physician that can be considered a medical opinion under the
regulations.  Rather, the record contains treatment notes and comments from
treating sources without discussion of functional limitations for the ALJ to weigh.
(The ALJ gave partial weight to State agency consultant Dr. McCarthy's opinion,
the only opinion in the record on functional limitations, which opined on plaintiff's
RFC.  (Tr. 98)).

Because the record does not contain a "medical opinion," from a treating
physician, the undersigned finds no error in the ALJ's treatment of plaintiff's
treating physicians' records.

2.      Consideration of Impairments and Medication Side Effects

a.      Alleged Impairments

Plaintiff argues that the ALJ violated SSR 96-8p by failing to consider the
effect of his ADHD, depression, and personality disorder.  (*Id.* at p. 7).  Plaintiff
cites authority explaining that nonsevere impairments may impose work-related
restrictions and should be considered.  He states that the ALJ made only a passing
reference to his cannabis dependence – and that reference was inaccurate.[2]
Plaintiff argues that these conditions pose significant difficulties including the
"inability to maintain attention and concentration; being short tempered, extremely

---

[2] The ALJ's statement is not inaccurate.  The ALJ stated that at the hearing plaintiff
reported that he stopped abusing marijuana in 2012.  (Tr. 96).  Plaintiff did indeed testify that he
stopped abusing marijuana in 2012.  (Tr. 56).

impulsive, prone to emotional overreaction and mood swings from normal to excitement or depression which can occur reactively or spontaneously." (*Id.* at 8). He insists that these difficulties affect the RFC and his ability to maintain substantial gainful employment.

In response, the Commissioner argues first that the ALJ properly considered all of plaintiff's impairments. According to the Commissioner, plaintiff's only impairments are his severe bipolar disorder and nonsevere substance abuse. (Dkt. 13, at p. 11). The Commissioner says there is no evidence supporting the claim that his ADHD is a medically determinable impairment, and it is plaintiff's burden to establish otherwise. Although plaintiff reported ADHD to Dr. Hong, a mere self-report is not sufficient to establish an impairment. (*Id.*) (citing 20 C.F.R. §§ 404.1508, 416.908 (a medically determinable impairments must be shown through "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [his] statement of symptoms.")). There is no record of a diagnoses of ADHD based on medical evidence. Further, Drs. Hong and Washington observed normal concentration. (*Id.*, Tr. 435, 877).

The Commissioner argues that plaintiff also failed to establish that he suffered from depression in addition to bipolar disorder. Although Dr. Rauf initially diagnosed depression when plaintiff presented at the crisis center, (Tr. 285), Dr. Hong and plaintiff's other treating doctors consistently listed his

diagnosis as bipolar disorder, rather than depression.  (*Id.* at p. 11-12) (Tr. 303,

307, 311, 316, 322, 329, 333, 337, 339, 346, 348, 350, 357, 368, 375, 379, 385,

402, 436-37, 447, 461, 465, 879).  The Commissioner contends that subjective

complaints alone are not enough to establish a medically determinable impairment.

Further, even if the ALJ should have found depression to be an impairment, the

error was harmless because there is no evidence of additional mental limitations

stemming from depression.  (*Id.* at p. 12).

Additionally, according to the Commissioner, plaintiff does not show error

in the ALJ's failure to discuss personality disorder.  Dr. Hong initially listed this

diagnosis as "rule-out" (Tr. 303) but later changed it to "active" (Tr. 348).

However, a diagnosis says nothing about the severity of the condition.  (*Id.*) (citing

*Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  Plaintiff failed in his burden

to prove that this condition significantly limited his ability to do basic work

activities.  (*Id.* at p. 12-13).  Moreover, any error in failing to discuss personality

disorder is harmless because the ALJ considered the impairment in assessing the

RFC.  (*Id.* at p. 13).  The ALJ relied on State agency psychological consultant Dr.

McCarthy and assessed greater limitations than Dr. McCarthy suggested.  Dr.

McCarthy identified plaintiff's personality disorder as a severe impairment and

thus considered this impairment in opining on plaintiff's mental limitations.  (*Id.*).

By relying on Dr. McCarthy's opinion, the ALJ accounted for any limitations

stemming from plaintiff's personality disorder.  Moreover, plaintiff has not identified any limitations caused by this impairment.

In the view of the undersigned, plaintiff is correct that the ALJ did not discuss ADHD, depression, or personality disorder in the decision, although he was diagnosed with all three conditions.[3]  (*See* Tr. 285, 348, 925).  However, any error in failing to consider the diagnoses is harmless error because there are no functional limitations in the record as a result of those conditions, beyond those assessed, to be included in the RFC.  If there were an error in not finding these impairments medically determinable or severe, then the error would have occurred at Step Two of the sequential review process as explained below.

Under the regulations, the ALJ must consider whether a claimant's impairment is a medically determinable impairment at Step Two.  *See* 20 C.F.R. § 404.1520.  A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508,

---

[3] The ALJ determined that plaintiff's substance abuse is a nonsevere impairment.  (Tr. 56)

18

404.1520(a)(4)(ii) and 404.1527(a)(1)).  "Therefore, a physical or mental

impairment must be established by objective medical evidence from an acceptable

medical source.  We will not use your statement of symptoms, a diagnosis, or a

medical opinion to establish the existence of an impairment(s)."  20 C.F.R.

§ 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4

(E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL

4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96–4p, 1996

WL 374187 at *1) ("A diagnosis establishes medically determinable impairment

only where it is supported by objective medical evidence.").  There is no error in

failing to consider non-medically determinable impairments throughout the

sequential analysis.  *See Jones*, 2017 WL 540923, at *6 ("If an alleged impairment

is not medically determinable, an ALJ need not consider that impairment in

assessing the RFC.") (citing *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 163384, at *4

(S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not

'medically determinable' need not be considered at all" in determining a claimant's

RFC)); *see also* 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(2).

Also at step two of the sequential evaluation process, the ALJ must consider

whether a claimant's medically determinable impairment is a severe impairment

and whether the impairment(s) meet the twelve month durational requirement in 20

C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also*

*Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009).  The

applicant bears the burden of establishing the existence within the administrative

record of objective medical evidence suggesting that the applicant was "disabled"

as defined by the Act.  In order to be classified as severe, an impairment or

combination of impairments must significantly limit the claimant's physical or

mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Basic work activities, defined in the regulations as "the abilities and aptitudes

necessary to do most jobs," include: (1) physical functions such as walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2)

capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and

remembering simple instructions; (4) use of judgment; (5) responding

appropriately to supervision, co-workers, and usual work situations; and (6)

dealing with changes in routine work settings.  Failure to find an impairment

severe at step two of the sequential analysis is not reversible error if the ALJ found

another impairment severe and thus continued with the five-step evaluation.  *See*

*e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*,

266 Fed. Appx. 451, 457 (6th Cir. 2008).

The undersigned concludes that since the RFC is supported by substantial evidence, as explained more fully below—and there is no credible evidence[4] of functional limitations greater than those assessed in the RFC caused by ADHD, depression, or personality disorder—any error here is harmless.  Consequently, even if the ALJ were to have determined that those conditions were medically determinable but nonsevere impairments, remand for further analysis would be futile.  This conclusion is consistent with the court's holding in *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017), where the ALJ failed to distinguish within a list of impairments between which impairments were medically determinable but nonsevere and which were not medically determinable.  Although the ALJ did not discuss whether these diagnoses constituted medically determinable impairments, the logic of *Rouse* is persuasive here.  The plaintiff argued that because it was not possible to tell which impairments the ALJ placed in each category, it was impossible to know if he properly considered the nonsevere impairments throughout the sequential analysis.  *Id.*  The court said that even if, on remand, the ALJ determined that all of the listed impairments were medically determinable but nonsevere, the pertinent question would then be whether the failure to include limitations from those impairments is supported by substantial

---

[4] The ALJ found plaintiff's subjective complaints not entirely credible.  (Tr. 98). Plaintiff does not challenge this determination.

evidence. *Id.* at \*5 (citing *Rose v. Comm'r of Soc. Sec.*, 2015 WL 6735313, \*5 (S.D. Ohio Nov. 4, 2015), *adopted and affirmed*, 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015). The court held that where the plaintiff did not identify any limitations from those impairments and it was not apparent from the record that any exist, the ALJ's error was harmless. *Id.* Thus, the court stated that ordering a remand for clarification of that question when the ALJ's RFC would not change "would be an exercise in futility," and found that, while error occurred, it did not justify remand. *See also Easterday v. Comm'r of Soc. Sec.*, 2016 WL 5422101, at \*8 (E.D. Mich. Aug. 19, 2016) (finding no reversible error in ALJ's decision that diagnosed depression was not a medically determinable impairment because the "existence of a diagnosis [did] not suggest functional limitations. Indeed, plaintiff bears the burden of proof at step two and has not come forward with any evidence of mental impairment that is more than a 'slight abnormality that minimally affects work ability regardless of age, education, and experience.'") (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213-214 (6th Cir. 1986) (a diagnosis unaccompanied by supporting clinical data is insufficient to support a finding of a severe impairment).

Plaintiff points to common difficulties associated with ADHD, depression, and personality disorder, but does not provide citations to the record to support that

those difficulties indeed affect his ability to perform work activities.  Plaintiff was

diagnosed with ADHD.  (*See* Tr. 66, 299, 925).  However, there is no medical

opinion in the record explaining what functional limitations he suffers due to his

ADHD that are not encompassed in the assessed RFC.

Until May 2013, plaintiff's personality disorder was listed as "rule out" (Tr.

346), but in May 2013 was changed to "active."  (Tr. 348).  No physician opines

on plaintiff's personality disorder, and there is no explanation of how his

personality disorder affects his ability to perform work activities in ways not

encompassed in the RFC.  As to depression, the Michigan Department of

Corrections noted signs of depression while he was incarcerated in January 2007.

(Tr. 271).  In February 2012, Dr. Rauf diagnosed plaintiff with depression.  (Tr.

285).  However, the rest of the record contains his bipolar disorder diagnosis with

no mention of depression other than plaintiff's subjective complaints.  There is no

opinion discussing functional limitations as a result of depression.

It is plaintiff's burden to establish the existence of disability.  *Key v.

Callahan*, 109 F.3d 270, at 274 (6th Cir. 1997).  As noted earlier, a mere diagnosis

does not address the severity of the condition.  *Higgs*, 880 F.2d 860, 863 (6th Cir.

1988).  Because the record does not support any functional limitations caused by

ADHD, depression, or personality disorder, any error in failing to consider those

conditions is harmless.  *Townsend v. Astrue*, 2013 WL 687042, at *5 (D. Or. Feb.

25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition); *cf. Warchlok v. Colvin*, 2017 WL 585041, at *4 (W.D.N.Y. Feb. 14, 2017) (Where ALJ did not consider the plaintiff's diagnosed mental impairments, error was harmful because the record indicated that the impairments "caused significant symptoms in multiple bodily systems apart from just Plaintiff's left ankle.  Remand on this basis alone is required.").  Therefore, remanding the case for the ALJ to discuss these impairments is unnecessary; the RFC would not change because there are no functional limitations in the record from these diagnoses that would alter the RFC determination.

### b.    Medication Side Effects

As to his medication side effects, according to plaintiff, the ALJ failed to discuss or consider the effect of medication side effects on his ability to work, pursuant to SSR 96-7p.  Plaintiff has been taking Abilify and Adderall to treat ADHD and bipolar disorder/manic depression symptoms.  (*Id.* at 12).  Plaintiff claims that the common side effects of Abilify include extreme dizziness, drowsiness, insomnia, and anxiety.  A common side effect of Adderall is heart palpitations.  Even while taking these medications plaintiff is prone to lash out, especially when told what to do.  (*Id.* at 12-13).  Plaintiff states that he has suicidal tendencies and that he testified that he has difficulty sleeping as a side effect of the

medication.  (*Id.* at 13).  He asserts that without these medications his condition

will deteriorate and "surely cause decompensation."  (*Id.*).  The side effects of his

medication are burdens on engaging in substantial gainful activity.

The Commissioner argues that there is no evidence of limitations from

medication side effects.  (*Id.* at p. 20).  Plaintiff recited common side effects of

Abilify and Adderall, but ignored the fact that he denied experiencing side effects

to his providers: Tr. 357, 364, 368, 374, 384, 401, 447, 461, 465.  (*Id.*).  Plaintiff

also testified that he had no side effects from Abilify.  (Tr. 50).  Plaintiff testified

that Adderall prevented him from sleeping, but the ALJ found his complaints not

entirely credible and the record does not support his claim of trouble sleeping.

(*Id.*).

The undersigned finds no error in the ALJ's silence as to plaintiff's

medication side effects and how those side effects affect his ability to work.  As

noted above, "the burden of proof lies with the claimant at steps one through four

of the process, culminating with a claimant's proof that she cannot perform her past

relevant work."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  In

the end, it is the claimant's burden to prove his or her functional capacity.  *See* 20

C.F.R. § 416.912(a); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Plaintiff has not satisfied his burden of showing that medication side effects

limit his ability to perform work activities.  Instead, plaintiff lists common side

effects of Abilify and Adderall (the common side effects of Abilify include extreme dizziness, drowsiness, insomnia, and anxiety and a common side effect of Adderall is heart palpitations), and aside from his testimony that he has trouble sleeping because of the Adderall, none of those side effects appear in the record evidence. (Dkt. 12, at p. 12). Rather, the record contains multiple reports of no side effects, Tr. 357, 364, 368, 374, 384, 401, 402, 447, 461, 465, and one report of constipation as a side effect in March 2014, Tr. 379. "Even if, as Plaintiff contends, the ALJ never discusses medication side effects, fatigue, neuropathy and pain, Plaintiff has not shown this omission was harmful." *Jones v. Comm'r of Soc. Sec.*, 2015 WL 12672746, at *12 (E.D. Mich. Nov. 23, 2015), *report and recommendation adopted*, 2016 WL 675908 (E.D. Mich. Feb. 19, 2016) (internal citation omitted) (citing *Shinseki, Sec'y of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")). Here, plaintiff has not met his burden and has not shown harmful error. Plaintiff states that his side effects are a burden on his ability to engage in substantial gainful activity, but he does not provide citations to the record to support this assertion. Indeed, there is no record support for this assertion. Thus, any error in the ALJ's failure to discuss medication side effects is harmless error.

3.    Re-contacting Physicians

Plaintiff argues that the ALJ erred in failing to re-contact the consulting physician regarding his impairments, arguing that 20 C.F.R. § 404.1512(e) imposes a duty on the ALJ to re-contact the consulting physician for clarification and when evidence received is inadequate to determine disability, additional information is necessary.  (*Id.* at 8-9).

The Commissioner responds that plaintiff relied on an out-of-date regulation.  (*Id.*) (citing *Hall v. Comm'r of Soc. Sec.*, 2016 WL 3869936, at *9 (E.D. Mich. June 3, 2016) ("New regulations became effective on March 26, 2012, rendering the decision to recontact discretionary.")).  Now, the ALJ is directed to re-contact medical sources if the record contains insufficient evidence to determine whether the claimant is disabled.  (*Id.*) (citing *Mims v. Comm'r of Soc. Sec.*, 2017 WL 1055542, at *3 (E.D. Mich. Mar. 21, 2017) (citing 20 C.F.R. § 404.1520(c)).  According to the Commissioner, the ALJ properly relied on Dr. McCarthy, who reviewed several years of medical evidence, in finding plaintiff not disabled.

The ALJ was not required to re-contact treating physicians for clarification.  There is no indication that the evidence in the record is insufficient on which to make a decision, and plaintiff does not explain what other evidence is available or where any insufficiencies lie.  Plaintiff's claim that the ALJ did not properly re-

contact physicians for clarification is not well-developed and is not well-taken.

The entirety of the argument is as follows:

> Additionally, the ALJ erroneously failed to request additional evidence regarding Plaintiff's impairments. The regulations imposed a duty upon the ALJ to recontact the consulting physician for clarification.  See 20 C.F.R. § 404.1512(e).  When the evidence received from a treating physician or psychologist or other medical source is inadequate to determine whether Plaintiff is disabled, additional information is necessary to reach a determination or a decision.  From the record it appears that the ALJ did not adequately recontact Plaintiff's medical sources to assess the effect of the conditions in tandem with his Bipolar Disorder on his RFC.

Dkt. 12, at p. 8-9).

The Commissioner is correct.  The regulation on which plaintiff relies, 20 C.F.R. § 404.1512(e), was not in effect at the time of the ALJ's decision.  The version of the regulation in effect on the date of the decision provides guidance at subsection (e) on obtaining a consultative examination, an issue plaintiff does not raise.  Instead of being required to re-contact a physician for clarification, at the time of the decision, the ALJ would re-contact a physician only where the "administrative record contains insufficient information to reach a disability decision."  *Weredick v. Comm'r of Soc. Sec.*, 2017 WL 4928649, at *8 (E.D. Mich. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 4112341 (E.D. Mich. Sept. 18, 2017); 20 C.F.R. § 404.1520(c)(1) (version effective until March

27, 2017) (the ALJ "*may* recontact your treating physician, psychologist, or other medical source.") (emphasis added).

Plaintiff does not argue that the record contained insufficient information to reach a decision.[5]  Plaintiff also does not suggest what other information could have been used in coming to a decision.  In the view of the undersigned, the record is not insufficient to reach a determination.  The record contains plaintiff's subjective complaints (found not entirely credible), treating physicians' and therapists' treatment notes, and the opinion of a State agency physician whose opinion supports the assessed RFC.  As discussed more fully below, the record provides substantial evidence for the RFC determination.

4.    RFC

Plaintiff claims that the ALJ did not properly assess the RFC.  According to plaintiff, although the RFC addressed changes in the work setting and contact with supervisors, co-workers, and the public, the ALJ did not discuss the medical evidence he relied on in coming to those conclusions.  (Dkt. 12, at p. 10).  He says the ALJ also failed to discuss plaintiff's ability to understand, carry out or remember instructions, and his ability to use judgment in making work-related

---

[5] The undersigned recognizes that an ALJ has a heightened responsibility to develop the record when the claimant is unrepresented at the time of his hearing.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Osburn v. Apfel*, 1999 WL 503528, at *7 (6th Cir. July 9, 1999).  However, plaintiff has not argued failure to develop the record, and in any event, a review of the record does not suggest that the ALJ failed to discharge his duty in that regard.

decisions.  Additionally, the ALJ failed to expound on plaintiff's ability to respond

appropriately to supervision, co-workers, and usual work situations and to deal

with changes in a routine work setting.  (*Id.*).  The State agency consultant opined

that plaintiff would have moderate limitations in these areas but marked limitations

working with the general public.  The ALJ assessed an RFC that limited plaintiff to

performing in a low stress environment provided with simple, routine and

repetitive work and that he must work in isolated conditions with occasional

supervision.  However, according to plaintiff, there is no medical evidence in the

record to support this RFC finding.  (*Id.* at p. 11).  The ALJ should have

considered all his limitations, even those considered mild, in formulating the RFC.

(*Id.* at p. 10) (citing *Biehl v. Comm'r of Soc. Sec.*, 2015 WL 736366, at *21 (E.D.

Mich. Feb. 20, 2015)).  Plaintiff asserts that the ALJ also neglected to consider the

impact of plaintiff's many psychological concerns other than bipolar disorder.

(*Id.*).

Plaintiff also argues that the ALJ erred when he found substantial evidence

supports the finding that plaintiff can perform sustained work activities.  (*Id.*).

According to plaintiff, the weight of the evidence and his own testimony establish

that he cannot maintain regular and continuous employment.  He has not been able

to maintain employment longer than three weeks.  (*Id.* at 14).  Although plaintiff

was working 10 hours a week at the time of his hearing before the ALJ, he was in

the position for two weeks and was terminated.  His unsuccessful work attempts fail to constitute substantial gainful activity.  (*Id.*).

The Commissioner argues that the ALJ properly considered plaintiff's ability to do basic mental work activities (the ability to understand, carry out, and remember instructions; make work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with changes in a routine work setting) as required by SSRs 85-15 and 96-8p.  (Dkt. 13, at p. 17).  The ALJ relied on Dr. McCarthy's opinion and assessed greater limitations than Dr. McCarthy suggested.  Further, the ALJ adequately addressed plaintiff's ability to do basic work activities.  (*Id.* at p. 18).  The Commissioner stated,

> Dr. McCarthy noted that Plaintiff had no limitations in understanding or memory and was not significantly limited in his ability to carry out short, simple, instructions, although he was moderately limited in his ability to carry out detailed instructions.  (Tr. 84).  The ALJ similarly found that Plaintiff could do simple, routine, repetitive tasks.  (Tr. 97 at finding 5).  Although the ALJ did not refer to Plaintiff's ability to make decisions, Dr. McCarthy stated that Plaintiff's [sic] was not significantly limited in that area.  (Tr. 84).  Dr. McCarthy also stated that Plaintiff was moderately limited in his ability to respond appropriately to changes, supportably noting that Plaintiff reported that he could handle changes although he did not like them, (Tr. 85, 223), and the ALJ addressed this statement by limiting Plaintiff to only occasional changes, (Tr. 97 at finding 5).  Finally, Dr. McCarthy noted that Plaintiff was markedly limited in his ability to interact with the public and moderately limited in his ability to respond appropriately to coworkers and supervisors, (Tr. 85), and the ALJ

>           addressed this statement by limiting Plaintiff to only
>           occasional supervision and no direct contact with the
>           public.  (Tr. 97 at finding 5).

(*Id.*).  Thus, the ALJ identified the medical evidence in the record supporting the

RFC finding.

       As to plaintiff's claim that the record does not support a finding that he

could work on a sustained basis, the Commissioner responds that the ALJ relied on

Dr. McCarthy's opinion that plaintiff's mental impairments were not disabling, and

plaintiff has not pointed to any opinion or medical evidence to undermine that

finding.  (*Id.* at p. 19).  Plaintiff relies on his subjective complaints of stopping

work because of his social limitations, but the ALJ found plaintiff's complaints not

entirely credible.  Plaintiff does not contest that determination.  (*Id.*).

       The undersigned finds that substantial evidence supports the limitations

included in the RFC.  The ALJ discussed State agency consultant, Dr. McCarthy's

opinions on plaintiff's residual functional capacity:

>           In July 2014, the State agency psychological consultant
>           opined the claimant would have moderate limitations
>           carrying out detailed instructions, responding to changes
>           in the work setting, and maintaining concentration for
>           extended periods.  He would have marked limitations
>           working with the general public.  He would have
>           moderate limitations interacting with supervisors and
>           coworkers.  (Ex. 2A).  The undersigned accords partial
>           weight to the State agency psychological consultant's
>           assessment in terms of their recommendation for limited
>           work setting changes, limited contact with others, and
>           simple work because the restrictions are consistent with

>the objective medical evidence regarding the claimant's bipolar disorder symptoms. Based on the objective medical evidence and the State agency psychological consultant's assessment, the undersigned finds the claimant would be limited to work in a low stress environment; simple, routine, and repetitive work; and he would require isolated work with only occasional supervision.

(Tr. 98). Dr. McCarthy's opinion provides medical evidence to support the assessed RFC and thus, contrary to plaintiff's assertion, the ALJ did discuss medical evidence on changes in work setting and contact with supervisors, co-workers, and the general public. *See* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to March 26, 2017) (providing that the ALJ must consider opinion of non-examining state agency consultants).

Curiously, despite his argument that the ALJ did not discuss medical evidence to support his decision, plaintiff acknowledges Dr. McCarthy's opinion and the ALJ's discussion of the opinion. Dr. McCarthy's opinion is medical evidence that supports the ALJ's RFC determination. As the Commissioner argued, Dr. McCarthy noted that plaintiff had no limitations in understanding or memory and was not significantly limited in his ability to carry out short, simple, instructions, although he was moderately limited in his ability to carry out detailed instructions. (Tr. 84). The ALJ similarly found that plaintiff could do simple, routine, repetitive tasks. (Tr. 97). Dr. McCarthy also stated that plaintiff was moderately limited in his ability to respond appropriately to changes, the ALJ

33

addressed this limitation by restricting plaintiff to only occasional changes.  (Tr. 97).  Dr. McCarthy noted that plaintiff was markedly limited in his ability to interact with the public and moderately limited in his ability to respond appropriately to coworkers and supervisors.  (Tr. 85)  The ALJ addressed this limitation by restricting plaintiff to only occasional supervision and no direct contact with the public.  (Tr. 97).  There is no contradictory medical evidence in the record.  The RFC is, therefore, supported by substantial evidence.

Plaintiff argues that the ALJ erred in finding that he can perform sustained work activities given that he has been unable to maintain regular and continuous employment.  (Dkt. 12, at p. 14).  This argument is essentially another way of attacking ALJ's assessment of plaintiff's limitations.  Plaintiff cites no authority for the proposition that having a past history of short-term jobs means he could not maintain substantial gainful employment with the limitations assessed in the RFC.  He also fails to cite to record evidence that his limitations prevent him from maintaining substantial gainful employment.  Plaintiff's unsuccessful work history "is relevant to the determination of whether or not Plaintiff was engaged in substantial gainful employment during the period of her disability," but does not undermine the substantial evidence that supports the ALJ's conclusion that plaintiff can engage in a number of jobs in the national economy.  *Brown v. Comm'r of Soc. Sec.*, 2011 WL 1630169, at *2 (N.D. Ohio Apr. 29, 2011).

34

Plaintiff does not challenge the ALJ's Step Five finding that there are jobs that exist in significant numbers in the national economy that plaintiff could perform. His challenge appears to rest on his insistence that he has greater limitations than those assessed, and for the reasons stated above, that argument fails.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 2, 2018                      s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 2, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7850
                                         tammy_hallwood@mied.uscourts.gov